### 13031.  GRIFFIN *v.* LESTER.

1. This was a suit by Griffin, as alleged purchaser of certain land, for damages on account of a breach by Lester, as owner, of an alleged contract for the sale of the land.  The court dismissed the petition on general demurrer.  In another suit by a real-estate broker against the same defendant, for commissions on account of the same alleged sale, this court construed the identical letter and memorandum relied upon by the present plaintiff, as purchaser, as the basis of this suit.

See *Montgomery* v. *Lester*, 25 *Ga. App.* 660 (104 S. E. 28). It was there held that the writings in question did not justify the construction that the term "stipulated acres," used by the owner in his letter to the broker, meant that he was willing to sell to the prospective purchaser, on the basis of $500 an acre, at whatever acreage a subsequent survey of the land would show, but only upon the basis of 123 acres. In so far, therefore, as the instant petition sets forth such writings as ground for the present contention that the owner had thereby agreed to sell according to the acreage as determined by such a survey, viz. at 100 acres, the suit was not maintainable.

2. The amendment to the petition alleged: "That a few days after petitioner went into possession of the land described in paragraph 1 of plaintiff's petition, to wit, on or about January 28, 1920, the defendant, said R. E. Lester, being at that time in Thomasville, Georgia, came to petitioner and did ratify the sale of said land to petitioner upon the terms and conditions above set forth, and stated to petitioner that he was going to let the trade made by his agent, J. S. Montgomery, stand." While it is true, as was held by the Supreme Court in *Brandon* v. *Pritchett*, 126 *Ga.* 286 (55 S. E. 241, 7 Ann. Cas. 1093), that "a parol ratification of a contract for the sale of land made by one without authority assuming to act for the owner is valid and binding upon the owner, provided the person assuming to act as agent in behalf of such owner signed a memorandum which in its terms complied with the provisions of the statute of frauds, which showed upon its face that it was executed in behalf of the owner," this rule (relied upon by plaintiff in error) would have no application here so as to take the case from under the ruling made in *Montgomery* v. *Lester*, were we to consider that the ratification pertained to the unauthorized sale under the memorandum and letter referred to, since such a ratification would not affect or change the effect or legal construction of the terms of such writings, but would merely supply any lacking element of authority. Thus, if the plaintiff, under his amendment, seeks to continue to rest his case upon the same untenable construction of the same memorandum and letter, the alleged ratification thereof would not inure to his advantage. If, however, the amendment as construed with its reference to the original petition must be taken as seeking to set up a parol ratification by the owner of a subsequent parol contract of sale by the agent, accompanied by a partial payment, and while the purchaser was in possession of the premises, then the situation would be different, and the ruling made in *Montgomery* v. *Lester*, with reference to the effect of the original written instrument of sale, would not control. Civil Code (1910), § 4634; *Kinderland* v. *Kirk*, 131 *Ga.* 454 (2) (62 S. E. 582). While the meaning of the amendment is not altogether clear in this respect, and the petition as amended does not in terms allege that such ratification occurred while the plaintiff purchaser was in possession, since the exact date when the plaintiff is alleged to have been dispossessed by the defendant is not set forth, still the latter construction,— that is, that the alleged ratification pertained to such subsequent oral agreement as to the terms of sale and was accompanied by a partial payment, and occurred while the plaintiff was still in pos-

session,— seems to be the reasonable and necessary meaning of the pleader; and under such a construction the petition as amended was not subject to dismissal on the general demurrers.

DECIDED SEPTEMBER 26, 1922.

Action on contract; from Thomas superior court — Judge Thomas. October 18, 1921.

*Branch & Snow, Merrill & Moore,* for plaintiff.

*Titus & Dekle,* for defendant.

JENKINS, P. J. The petition in effect alleged: The plaintiff, Griffin, on December 12, 1919, bought from the defendant, Lester, through the latter's agent, Montgomery, certain property, described as 123 acres, more or less, the contract of purchase being evidenced by the following writing: " December 12, 1919. Received of J. C. Griffin the sum of $500 as part payment that farm situated on Magnolia Road about 3 miles south of Thomasville, Ga., and known originally as the A. F. Prevatt, now the R. F. Lester Place, fully described in a deed from R. E. Lester to R. E. Lester Jr., recorded in Book 3 G, page 121, Clerk's office S. C., containing 123 acres more or less, the consideration being $50 per acre, balance purchase price due upon January 5, 1920, when deed is to be delivered. J. S. Montgomery, Agt." After receiving the $500 stated in this memorandum, Montgomery sent a deed to Lester, the owner, to sign; but Lester declined, writing to the agent as follows: " Dialville, Tex., Dec. 17, 1919. Mr. J. S. Montgomery, Thomasville, Ga. Your letter with enclosure of deed to hand. I am certainly glad to know that you have a purchaser. I notice you have deed made out for 123 acres, while the deed on record calls for 123 acres more or less. According to Mr. Parker's survey, there is 124.97 or practically 125 acres. I am willing to sell the place at stipulated acreage without more or less clause. I purchased few weeks since wire for line fence between Cochrans and myself, hired Mr. Darby to put it up. I would expect Mr. Griffin to pay for wire and labor of putting up same as it is recent improvement and undergoing completion. If you will have the place surveyed my expense make out new deed, Mr. Griffin agreeing to pay for wire and expense of putting up same, we will put the deal through on time. Yours sincerely, R. E. Lester." It was alleged that under this letter nothing was left to be done but determine the exact acreage in accordance with a survey; and that, pending such survey, the plaintiff, by the consent and

under the direction of said agent, went into possession of the land and incurred certain alleged expenses therein; that while negotiations were pending as to the exact acreage, the defendant owner ejected plaintiff and his property from the land; that the correct acreage as determined by the county surveyor in the survey was 100 acres, for which the proper price under the contract was $5,000, which plaintiff tendered to the defendant, but which was refused; and that plaintiff is entitled to recover $1,000, the difference between the contract price and the actual value of the land at the time the sale was to be closed, and $159.51 as expenses incurred in preparation for the purchase of and farming on said land. Plaintiff amended the petition as set forth in the 2d headnote. It was further alleged that the plaintiff actually paid to the agent the $500 mentioned in the receipt of December 12, 1919, quoted, and that the plaintiff went into actual possession of the premises on January 1, 1920. While it was alleged that the survey was completed on January 5, 1920, it appears from the 5th paragraph of the petition that the plaintiff was still negotiating with the agent after the result of the survey was known. Hence, the eviction of the plaintiff by the defendant from the premises, which the 6th paragraph alleged occurred while " negotiations were pending as to what was the exact acreage," cannot be taken as having preceded the alleged ratification made January 28, 1920, of the agent's alleged trade, as set up by the amendment; so that the allegation in the amendment that the ratification occurred " a few days after petitioner went into possession," taken with the original petition, will be construed as an allegation that the ratification occurred while the plaintiff was still in possession under his alleged trade with the agent. The defendant demurred to the petition and the amendment, chiefly upon the grounds that the plaintiff failed to set forth any binding contract between the plaintiff and the alleged agent which could legally be enforced; that no written authority, under seal or otherwise, was shown between the defendant and the alleged agent, authorizing the alleged agent to enter into a written contract for the sale of the land; and that the alleged contract for the sale of land and the alleged ratification were not in writing. The court sustained the demurrers.

It is not necessary to add anything further to the syllabus.

*Judgment reversed. Stephens and Bell, JJ., concur.*